Please the court, Cedric Hopkins for Jason Tyler, the petitioner in this case. My client has two cases in Pima County Superior Court in Arizona, a 2005 case and a 2006 case. In the 2005 case, Judge Richard Nichols found that a material term of his 2005 plea agreement was that one of the material terms was that no further charges would be brought against him regarding the course of conduct in that 2005 case. Judge Nichols then found that the 2006 indictment, the second case that was brought against Jason Tyler, encompassed the same course of conduct as the 2005 plea agreement. And found that on April 17, 2006, when the state indicted Tyler, they breached his 2005 plea agreement. That's a finding that has not been disturbed by any appellate court. The breach still stands. And what the courts have done instead of remedying the breach... One minute, please. Can you stop the clock? Could you leave the courtroom, please? All right. You can continue. Okay. Thank you, Judge. What the courts have done instead of remedying that breach, they've looked at my client's... They shifted the focus from that breach to my client's actions. And when he filed... In the second case, he filed a motion to dismiss the second case, the 2005 case. The judge who said that that had been a breach, he didn't say at the time, that is, at the time the plea was taken. It was not made clear then. He said that later on during post-conviction proceedings, correct? Right. And there's two... And another judge in post-conviction proceedings who had it more directly in front of that judge said there wasn't a breach, correct? No. We have two different judges saying it was a breach or not, don't we? We do, Judge. But I would disagree that the second judge had it more in front of them than the first judge. But more important, the Arizona Court of Appeals said, well, even if there is a breach, it was waived. It agreed that your client's decision to withdraw the motion to dismiss and then entering into the 2006 plea agreement waived it. And so the question is, did that for us, I guess, is did that court unreasonably apply Santabello in making that determination? And it does seem like Santabello is pretty distinguishable. So what was the problem with what the Arizona Court of Appeals did under the AEDPA standard where we have to find that the court made an unreasonable application of a Supreme Court precedent? Well, I think what the courts have done is mix the two cases together. You say that there's my client filed a motion to dismiss in one case and withdrew that, and that constitutes waiver. First of all, I'm not saying that. The State courts said that. I'm sorry. Yes. Yes. Sorry. So the State courts have said that that constitutes waiver. In my mind, that's an implicit waiver, and that's an implicit waiver in another case. But notwithstanding that, in order to grant relief on that part of the claim, we would have to say the State court's resolution of your client's claim was an unreasonable application of Supreme Court precedent. Right. And it is. And so why is it an unreasonable application of Santabello, which is the only case that you raised in this part of your appeal? I raised two, Santabello and also Carnley v. Cochran. It's unreasonable under Santabello because the only avenue that my client had to pursue the breach was in the 2005 case under the Rule 32 of the Arizona Rules of Criminal Procedure. And he did that throughout his proceedings. He never once waived that. What you have to find, if you're going to uphold what the State courts have done, you have to find that his actions in a separate case can waive his Rule 32 rights in the first case, which he was continuing to pursue. And I don't — first of all, waiver needs to be expressed. That's what Carnley says, and more recently in Lemke. That's what this Court has found. And there's nowhere in the record in the 2005 case where my client expressly waived his right to pursue his Rule 32 rights. The last thing that was done in the Rule — in the 2005 case is the judge told him that he could pursue his Rule 32 rights. Same — I'm confused now about the timing, because 2005 he pled guilty, correct? Yes. And so that case was over. And then his argument, I thought, was that the 2006 indictment was a breach of the 2005 plea agreement. Is that right? That's correct. But then he didn't pursue that argument, at least in the 2006 proceeding. He just had a motion to dismiss. And it wouldn't be proper to pursue that in the 2006 case. Why is that? Because wouldn't he be able to bring a motion to dismiss that it was a breach of his plea agreement? Are you saying that that's not allowed under Arizona law? No. His 2005 case is — that one goes first, and he pled guilty and was sentenced, and then they sentenced — and then they indicted him in the 2006 case. His argument that the 2005 plea agreement was breach has to be maintained in the 2005 case. There was a separate argument in the 2006 case. And so — And what's the separate argument in 2006? It's that if you — you can't do this because — Because you're precluded by the 2005 deal, correct? Yes. So in 2006, his argument is exactly that. You can't pursue it here if you — because the 2005 precludes it, correct? Yes. There's a — that's under a blackledge to say that the State cannot bring the second case. But the first case is, by bringing the second case, you have breached this first case's plea agreement. I mean, there's two separate arguments to raise in two separate cases. He didn't have to pursue any argument in the 2006 case. And how did he pursue his argument in the 2005 case? Did he — did he ask the judge to put aside the 2005 plea agreement, or how — help me understand that. Yes. What he did was ask to vacate the conviction and sentence under the 2005 plea agreement because it had been breached by the State. And there's — again, going back to the action of my client in the 2006 case, filing and then withdrawing a motion to dismiss, in the 2005 case, they said that that constitutes waiver. In that case, the action that he took in what they have determined to be an unrelated case. And to me, that's improper. I'd like to reserve the rest of my time for rebuttal, if that's okay. All right. We'll hear from the government. Good morning. Alan Hayman for the State of Arizona. There was no unreasonable application of Santa Bella in this case for the reason that this Court has been discussing, which is the issue of waiver. But did he waive it in the 2000 — I'm sorry. Did he waive it in the 2005 case? I think that's what opposing counsel is arguing. He — he did not waive it expressly in the 2005 case, but that is the — that is the inextricable — 2005 and 2006 are inextricable in that respect, because when the case, it was conditioned on the — on the agreement that the sentence in the 2006 case would be ordered to run concurrently with the sentences in the 2005 plea agreement. And by doing that, it amounted to a ratification of the validity of the convictions and sentences in the 2005 proceeding. It is difficult to see how the defendant can accept the benefit of the 2005 plea agreement by having the 2006 sentences run concurrently with it and at the same time claim that the 2005 proceeding was invalid due to a breach. Santa Bella claims are, in fact, waivable. And the implicit waiver in this case is a materially distinguishable aspect of this case. That distinguishes from Santa Bella, that there was no unreasonable application of Santa Bella. There was one thing I would like to discuss about the finding of a breach by itself. The Arizona Court of Appeals assumed without deciding that there was a breach. But as has just been discussed, there were two trial court rulings on the issue of the breach. There was a 2005 ruling and a 2006 ruling. The 2006 trial judge found that there was no promise and that there was no breach. That 2006 ruling is the last recent decision in the 2006 case, but it's also a very detailed, it's a very thorough analysis of the issues of the conduct underlying the agreement. But don't we have to look at the Arizona Court of Appeals decision, which was even assuming there was a breach, there was no Santa Bella violation? Yes. That is why our primary argument has to do with the issue of waiver. But as a backdrop, to understand the factual circumstances underlying the two agreements, the 2006 amendment entry by the trial court really sets forth in more detail the precise circumstances of both plea agreements. Setting aside Santa Bella, I would like to address the Blackledge MENA issue and the issue of procedural default, which is the second question certified by this Court. Our argument is that the Blackledge claim is procedurally defaulted because it was not presented to the Arizona Court until the petitioners petitioned for a discretionary review to the Arizona Supreme Court, and presenting an argument to the Arizona Supreme Court is not fair presentment. I mean, if you present it in that court for the first time, that is not fair presentment for habeas purposes. The defendant claims that he presented his Blackledge claim to the trial court in his post-conviction relief petition, but what he asserted in the trial court was a Santa Bella claim, not a Blackledge claim, and those two are distinct. Santa Bella claims assert a breach in a plea agreement. A Blackledge claim, on the other hand, it addresses the validity, it addresses the waiver effect, if any, of a subsequent guilty plea that is entered into after the alleged constitutional infirmity, and that Blackledge claim in that respect was never presented to the Arizona trial court. Now, I thought the Arizona Court of Appeal had said, even assuming we can reach the merits that he can go through the Mena Blackledge gateway, there's no double jeopardy violation here. And so it did, in effect, reach the Blackledge-Mena gateway argument, at least, didn't it? Well, and that brings into play that there is a subtle but important difference between a Blackledge claim, which is premised on a due process violation, allegation of a due process violation, and a Mena claim, which is premised on the idea that double jeopardy was violated. When the petitioner presented his Blackledge claim to the Arizona Court of Appeal for the first time, he was alleging a double jeopardy violation. He was alleging that the state lacked the power to indict, because the 2006 indictment supposedly violated double jeopardy. He did not argue that the 2005 plea agreement gave him a due process right not to be held into court in the 2006 charge. And so those are separate analyses. They are legally separate and factually separate. And in resolving the petitioner's Blackledge claim, which more appropriately should have been called a Mena claim, because Mena deals with double jeopardy and Blackledge deals with due process, the Court of Appeals said that there was no double jeopardy violation. So the Court of Appeals never ruled on whether there was a due process right not to be held into court, owing to the 2005 plea agreement. That particular argument was presented for the first time to the Arizona Supreme Court. So the double jeopardy claim, I'm assuming, is not before us. And there's no prosecutorial vindictiveness claim, as was discussed in Blackledge, correct? So it would just – Could you say that again? There's no prosecutorial vindictiveness claim. That was the – the vindictiveness of the prosecutor was the issue in Blackledge, sorry. Oh, not at all. Not at all. So it's solely a breach of plea agreement, and we don't have a case like Blackledge or Mena on that issue. Is that correct? Right. There is no case law, let alone clearly established Supreme Court case law. That said that an alleged breach of a plea agreement struck the state of the power to later indict the defendant. And to reach the merits, it – we believe there was a procedural default here, but even assuming it was not defaulted, there was no Blackledge violation in the state bringing forth a 2006 indictment. Okay. Again, there's been – there's no clearly established case law that said that a breach of a plea agreement struck the state of authority to bring forth a subsequent indictment. And perhaps more importantly, the Santo Belo claims are waivable. They are waivable. Puckett v. United States has strongly said that Santo Belo claims are waivable. And, you know, you can forfeit a Santo Belo claim if you fail to bring it in the state – if you fail to timely object. But on the other hand, if you intentionally relinquish a Santo Belo claim, then there is no error at all. Puckett v. United States says that. So the idea that a Santo Belo claim is waivable is irreconcilable with the idea that it – that the state can't bring forth a later indictment based on an alleged Santo Belo violation, because, again, Santo Belo claims are waivable. So for those reasons, there was no unreasonable application of Supreme Court precedent about the Arizona court in this instance. And the defendant is not entitled to hatefully honor the ethics. If there are no further questions, I'll go ahead and take a seat. Thank you. Thank you. To address just the – there's been talk about the 2005 judge and the 2006 judge and what was before them. I just want to make it clear that the 2005 judge who did find a breach is the only judge who did hear the evidence before him. So he did have more in front of him, in my opinion, than the 2000. Can you interpret this as finding a breach? He did find a breach. He was saying there was a – he commented that there was a breach, but did he make a finding that there was a breach? Well, his words were that the – Tyler's claim of breach of plea agreement is well taken. After he went through the analysis of it being the same time, same co-defendants, everything stemmed from the same bank ledger that was stolen in both cases. So the judge did find after hearing from both prosecutors that it was the same case, same course of conduct. Could you address opposing counsel's argument that because the deal for the 2006 plea was to have a concurrent sentence with the 2005 conviction, it implicitly waived the claim of breach of plea agreement in 2005? Sure. First, the waiver needs to be expressed, not implicit, in this case. And if you say that the concurrent sentence amounts to him waiving his right to bring a Rule 32 claim, a post-conviction claim, in a separate case that they determined to be unrelated, then what other terms does it need to take precedence or priority? Because you're saying that under that plea agreement, he can't do something, which is the Rule 32 claim that he wants to bring. And we're going to hold the sentence in the first case. Does that stand versus the second sentence? When you start saying that just because the sentence are concurrent, that now overlaps the two plea agreements, then you have a lot of terms that needed to be The bottom line is that no action that Tyler took in the 2006 case could affect his rights in the 2005 case unless expressly done. And they had three opportunities to make that express. One was on the record verbally, they could have done it. And the second two were both in the plea agreement. There's a special terms at ER 192 that mention the 2005 case regarding a concurrent prison sentence, but they don't mention him waiving a right. And then the second one is under the waiver section of the 2006 plea agreement. That's another place for an express, and they did not mention it there either. Thank you. All right. The case stands submitted. And the next case for argument is Wong v. Holder.
judges: Farris, Fernandez, Ikuta